(17 Misc. Rep. 98)
PEOPLE ex rel. PENNY v. BOARD OF EXCISE OF CITY OF UTICA.

(Oneida County Court.   May, 1896.)

1. INTOXICATING LIQUORS—REVOKING LICENSE—SUMMONS.
    A summons signed, "The Board of Excise of the City of Utica, N. Y., by
    J. Benj. Brady, Commissioner of Excise and Chairman of said Board," was
    signed by the board, within Laws 1892, c. 401, § 42, as amended by Laws
    1893, c. 480, § 10, providing that the board of excise "may summon before
    it" a person charged with violating the excise law.
2. SAME—KEEPING DISORDERLY HOUSE.
    Under Pen. Code, § 322, defining a keeper of a disorderly house as one
    "who keeps a house of ill fame or assignation of any description, or a house
    or place for persons to visit for unlawful sexual intercourse, or for any
    lewd, obscene or indecent purpose, or disorderly house, or house commonly
    known as a stale beer dive," a charge of "keeping a disorderly house" nec-
    essarily implies keeping a place where persons are permitted to meet for
    unlawful sexual intercourse.
3. EVIDENCE—JUDICIAL NOTICE.
    The board of excise can take judicial notice of the premises which it has
    licensed.

Certiorari by De Witt C. Penny to review the determination of the
board of excise of the city of Utica, revoking an hotel keeper's license
issued to relator.   Affirmed.

Josiah Perry, for relator.

J. K. O'Connor, for respondent.

DUNMORE, J.   The old excise law (chapter 401, Laws 1892, § 42,
as amended by chapter 480, § 10, Laws 1893), under which the proceed-
ings sought to be reviewed were taken, provides that upon a verified
complaint, etc., the board may summon before it, etc.   The relator
contended before the board, and now contends, that the above pro-
vision required the summons to be signed by the board itself, and by
a failure to do so the board acquired no jurisdiction to proceed in the
matter.   The return shows that at a meeting of the board on De-
cember 23, 1895, a resolution was adopted, instructing the chairman
and attorney to draw up a complaint and summons, and to serve
notice on relator, etc.   Thereafter a summons was drawn up, direct-
ing relator to appear, etc., and was signed as follows:

"The Board of Excise of the City of Utica, N. Y.
"By J. Benj. Brady, Commissioner of Excise and Chairman of Said Board."
"Attest:
"Henry Scheehl, Clerk of Said Board."

I think the summons was signed by the board, within the meaning
of the statute, and that it was clearly sufficient.

Another ground of complaint is that the evidence produced before
the board was insufficient to sustain the finding.   The complaint
presented to the board charged that relator, during the month
of December, 1895, permitted the licensed premises to become a
place for persons to visit for unlawful sexual intercourse, contrary
to the provisions of the excise law, and also alleged that defend-
ant was arraigned in the city court of Utica upon the charge of
keeping a disorderly house, in that he had permitted persons to visit

said premises for the purposes of unlawful sexual intercourse, and that relator had entered a plea of guilty thereto. The record of the conviction of the relator of the offense of "keeping a disorderly house" was offered and received in evidence. No other part of the record, however, was offered or received, so that the record of conviction does not show what the specific charge of keeping a disorderly house was. Section 322 of the Penal Code defines a keeper of a disorderly house as follows:

"A person who keeps a house of ill-fame or assignation of any description, or a house or place for persons to visit for unlawful sexual intercourse, or for any lewd, obscene or indecent purpose, or disorderly house, or a house commonly known as a stale beer dive, or any place of public resort by which the peace, comfort or decency of a neighborhood is habitually disturbed," etc.

The statute authorizing a board of excise to revoke a license (section 28 of chapter 401 of the Laws of 1892, as amended by section 8 of chapter 480 of the Laws of 1893) provides:

"A board of excise may * * * revoke any license * * * if the licensed premises are kept as a house of ill-fame, or a house or place for persons to visit for unlawful sexual intercourse, or for any lewd or obscene or indecent purposes, or as a resort for thieves or other criminals, or if the peace or decency of a neighborhood is habitually disturbed," etc.

The relator contends that keeping a disorderly house does not necessarily imply that relator had committed the acts charged against him, and therefore his plea of guilty of keeping a disorderly house was not evidence that he had committed any act which authorized a revocation of his license. I do not think the relator's position tenable. I think keeping a disorderly house necessarily implies keeping a place where persons are permitted to meet for unlawful sexual intercourse; but, even if this were not so, the oral proof clearly identified the acts as of that nature, and clearly showed that the charge to which relator pleaded guilty was that of permitting unlawful sexual intercourse in his hotel. It is claimed, however, that the premises where the alleged unlawful acts were committed were not proven to be the licensed premises. The clerk of the excise board testified that the licensed premises were No. 8 Elizabeth street. The evidence also tended to show that the hotel where the alleged acts occurred was known as the "Commercial Hotel," but there was no direct evidence that that hotel was located at No. 8 Elizabeth street. It was shown, however, that relator's license was an "hotel" license. It was proven that he kept the Commercial Hotel. There was no evidence that he kept any other hotel. That No. 8 Elizabeth street and the Commercial Hotel were identical was a natural inference from the evidence given. But, even if this were not so, it seems to me that this excise board could take judicial notice of its own acts, and therefore could take judicial notice of the premises which it had licensed. A court can take judicial notice of all matters in any manner depending on its discretionary powers and duties. 12 Am. & Eng. Enc. Law, 184, 185; Cash v. State, 10 Humph. 111. The court can take judicial notice of its own judgment in another matter. Farrar v. Bates, 55 Tex. 193. A judge may take official notice of the existence before his court of a prosecution for crime against one

called as a juror.    State v. Jackson, 35 La. Ann. 769.    The judge may take judicial notice that he had not signed a paper sought, on motion, to be stricken from the files.    Secrist v. Petty, 109 Ill. 188. In this case the board of excise were acting in a judicial capacity, and, in like manner, could take judicial notice of the premises they had licensed, and it is presumed that they found they were the premises in which the illegal acts were permitted.

I think, for the foregoing reasons, that the board of excise were justified in finding that the relator had entered a plea of guilty to the offense charged against him in the complaint before them, and this was clearly sufficient proof to justify them in revoking the license. The proceedings before the board of excise are affirmed, and the writ dismissed; but, as counsel for the board made no argument and submitted no brief, it is without costs.

Proceedings affirmed and writ dismissed, without costs.