[L.A. No. 31586. Mar. 10, 1983.]

WILFRED ANTHONY DANIELS, Plaintiff and Appellant, v.
DEPARTMENT OF MOTOR VEHICLES, Defendant and Respondent.

COUNSEL

James Gaus for Plaintiff and Appellant.

George Deukmejian, Attorney General, and Thomas Scheerer, Deputy Attorney General, for Defendant and Respondent.

OPINION

**BROUSSARD, J.**—In this appeal we consider whether an accident report filed pursuant to Vehicle Code section 16000[1] is sufficient without additional evidence to support the suspension of a driver's license in a formal Department of Motor Vehicles (D.M.V.) hearing.

In May 1979, the D.M.V. received what is known as an SR 1 report[2] completed and signed by Carlita Lynn Dorham. The report described an accident

---

[1] All statutory references are to the Vehicle Code unless otherwise noted. At the time of the accident, section 16000 provided: "The driver of a motor vehicle which is in any manner involved in an accident originating from the operation of a motor vehicle on any street or highway which accident has resulted in damage to the property of any one person in excess of three hundred fifty dollars ($350) or in bodily injury or in the death of any person shall within 15 days after the accident, report the accident on a form approved by the department to the office of the department of Sacramento, subject to the provisions of this chapter. A report shall not be required in the event that the motor vehicle involved in the accident was owned or leased by or under the direction of the United States, this state, or any political subdivision of this state or municipality thereof." Since the accident, the minimum monetary amount has been increased to $500.

[2] The report required to be filed by section 16000 is designated by the D.M.V. as an SR 1 report, and for convenience shall be referred to as such in this opinion.

that allegedly occurred April 25, 1979, involving a vehicle owned and operated by Dorham and another vehicle owned and operated by licensee Daniels.

On October 10, 1979, the D.M.V. issued an order of suspension of Daniels' driver's license for his failure to file an accident report and proof of financial responsibility. Daniels requested a formal hearing pursuant to section 16075. At the hearing, the referee produced and received into evidence the SR 1 report. The attorney for Daniels objected to the report on the grounds that it contained hearsay and that it had not been authenticated. The objection was overruled on the theory that the report was admissible under section 14108, which provides that at formal hearings ". . . the department shall consider its official records and may receive sworn testimony . . . ."

Daniels was called as a witness by the referee, but on advice of counsel, refused to respond when asked whether he was involved in the accident. He asserted that testifying would tend to incriminate him in the commission of a crime.

The referee found that Daniels had been in an accident involving property damage in excess of $350, and that he did not have insurance or other type of financial responsibility covering the accident in effect at the time that it occurred.

Following the recommendation of the referee, the D.M.V. issued its order of suspension January 28, 1980. Daniels' petition for writ of mandate was denied by the superior court. The Court of Appeal reversed.

The events underlying the companion case of *Himelspach* v. *Department of Motor Vehicles* (1983) *post*, at page 542 [189 Cal.Rptr. 518, 658 P.2d 1319], are procedurally similar except that Himelspach did not personally attend the formal hearing. However, she was represented by counsel who, coincidentally, is the same attorney who represents Daniels. The Court of Appeal affirmed the superior court's denial of a petition for writ of mandate. We granted a hearing to resolve the conflicting decisions of the Courts of Appeal.

The California Financial Responsibility Law (Veh. Code, § 16000 et seq.) requires drivers of motor vehicles to be self-insured, to have insurance, or to be otherwise financially responsible for damages caused by accidents. A driver involved in an accident causing property damage over $500 (formerly $350) or death or personal injury must report such accident to the D.M.V. on an approved SR 1 report form. Failure to report an accident covered by section 16000 results in a notice of intent to suspend. The notice advises the driver or owner of his or her right to a formal or an informal hearing on the matter. (See §§ 14100 et seq. and 16075.) Those sections provide the procedural parameters

for the hearing. Those procedural matters not covered by the Vehicle Code are governed by the Administrative Procedure Act (Gov. Code, § 11500 et seq.; see Veh. Code, § 14112). The question in issue here is whether the procedure whereby the D.M.V. bases its order suspending a license solely on the SR 1 report is authorized by statute and complies with the dictates of due process. For the reasons that follow, we conclude that, when the licensee requests a hearing, the use of the SR 1 report as the sole basis for suspension of a license under the Financial Responsibility Law is not authorized by statute. Because we so conclude, we do not decide whether the procedure of basing suspensions solely on the SR 1 report violates due process.

■ When an administrative agency initiates an action to suspend or revoke a license, the burden of proving the facts necessary to support the action rests with the agency making the allegation. Until the agency has met its burden of going forward with the evidence necessary to sustain a finding, the licensee has no duty to rebut the allegations or otherwise respond. (*La Prade* v. *Dept. of Water & Power* (1945) 27 Cal.2d 47, 51 [162 P.2d 13]; *Parker* v. *City of Fountain Valley* (1981) 127 Cal.App.3d 99, 113 [179 Cal.Rptr. 351]; *Martin* v. *State Personnel Bd.* (1972) 26 Cal.App.3d 573 [103 Cal.Rptr. 306]. ■ The mere fact that the licensee has the right to subpoena witnesses (§ 14104.5) does not relieve the D.M.V. of meeting its burden of producing competent evidence supporting a suspension. Thus, in this case, the licensee had no duty to testify or otherwise rebut the allegations at the hearing until the D.M.V. made a prima facie showing by competent evidence that the licensee was involved in an accident that required the filing of an SR 1 report.

■ It is well recognized that the private interest at stake in this case—the right to retain a driver's license absent competent proof of a violation of the law—is a substantial one. (*Burkhart* v. *Department of Motor Vehicles* (1981) 124 Cal.App.3d 99, 108 [177 Cal.Rptr. 175]; see *Dixon* v. *Love* (1977) 431 U.S. 105 [52 L.Ed.2d 172, 97 S.Ct. 1723].) Nevertheless, the D.M.V. contends that the societal interest in having an expeditious and inexpensive hearing outweighs the interest of the licensee. Whatever the weight given to the interest in an expeditious hearing, it is not so great as to allow the deprivation of a property interest absent a showing by substantial competent evidence of facts supporting a suspension.

On this point, the United States Supreme Court has noted that the "assurance of a desirable flexibility in administrative procedure does not go so far as to justify orders without a basis in evidence having rational probative force. Mere uncorroborated hearsay or rumor does not constitute substantial evidence." (*Edison Co.* v. *Labor Board* (1938) 305 U.S. 197, 230 [83 L.Ed. 126, 140, 59 S.Ct. 206].) This court has also taken the position that "[t]here must be substantial evidence to support such a board's ruling, and hearsay, unless

specially permitted by statute, is not competent evidence to that end. [Citations.]" (*Walker* v. *City of San Gabriel* (1942) 20 Cal.2d 879, 881 [129 P.2d 349, 142 A.L.R. 1383].) Thus, the suspension in this case is invalid unless it can be said that the evidence produced at the hearing was legally sufficient to support the findings.

In this regard, two theories are advanced by the D.M.V. to support the use of the SR 1 report as the sole basis for findings justifying a suspension. First, it is argued that the evidence falls within a statutory exception to the hearsay rule. Second, even if the report is hearsay that would be inadmissible over objection in a civil action, it is specially permitted by statute in suspension hearings.

" 'Hearsay evidence' is evidence of a statement that was made other than by a witness while testifying at the hearing and that is offered to prove the truth of the matter stated." (Evid. Code, § 1200, subd. (a).) Unless otherwise provided by law, hearsay evidence is inadmissible. (Evid. Code, § 1200, subd. (b).) There is no dispute that the SR 1 report constitutes hearsay and that it would be inadmissible in a civil action unless it meets the requirements of a recognized exception to the hearsay rule. The D.M.V. asserts that the report falls within the business record exception provided by Evidence Code section 1271. That statute makes admissible evidence of a writing made as a record of an event when (a) the writing was made in the regular course of business; (b) the writing was made at or near the time of the act, condition or event, (c) the custodian or other qualified witness testifies to its identity and the mode of its preparation; and (d) the source of information and method and time of preparation were such as to indicate its trustworthiness.

Two of the four requirements of Evidence Code section 1271 are met in this case. The report was made shortly after the accident, and the fact that the report is made under penalty of perjury and pursuant to a legal duty tends to indicate its trustworthiness. However, the D.M.V. as custodian, upon receipt of the form, is in no position to testify to its identity and the mode of its preparation. Most significant, though, is the fact that the report is not made in the regular course of business.

The D.M.V. argues that the report is made in the regular course of business because it is required by law (§ 16000) and "it is the regular course of business for the Department of Motor Vehicles to receive such reports." This argument, however, misconstrues the nature of the first requirement of the business records exception. Although it may be the regular course of business for the D.M.V. to receive the report, it undoubtedly is not in the regular course of business for the citizen author to make to make such a report. And, it is this aspect of the report that bears on the trustworthiness factor contemplated by this

exception to the hearsay rule. Thus, we conclude that the SR 1 report does not meet the requirements of the business record exception to the hearsay rule.

The D.M.V. argues, however, that even if the report is hearsay that would be inadmissible in a civil proceeding, the SR 1 is an official record of the D.M.V. and that its admission in the suspension hearing is specially provided by statute.

The D.M.V. contends that the specific authority for use of the SR 1 report in a suspension hearing is found in the sections of the Vehicle Code dealing with the procedure to be followed in formal and informal hearings. In particular, the D.M.V. contends that the matter of admission of the SR 1 report is "covered" by section 14108, which provides in pertinent part that at formal hearings ". . . the department shall consider its official records and may receive sworn testimony . . . ." Section 14112, provides that "[a]ll matters in a formal hearing not covered by this chapter shall be governed, as far as applicable, by the provisions of the Government Code relating to administrative hearings . . . ."

If the matter is not "covered" by the Vehicle Code, the D.M.V. appears to concede that the issue is governed by Government Code section 11513, which provides in relevant part that "[h]earsay evidence may be used for the purpose of supplementing or explaining other evidence but shall not be sufficient in itself to support a finding unless it would be admissible over objection in civil actions."

The question thus becomes whether the language "shall consider its official records" is a clear legislative authorization to allow use of the report as the sole basis to support a license suspension. We conclude that section 14108, while allowing *consideration* of the official records of the D.M.V., does not provide authority for allowing the SR 1 to form the sole basis for a license suspension.[3]

The legislative mandate of Government Code section 11513 against sole reliance on hearsay evidence is emphatic; the language of section 14108 fails to express a clear legislative intent to supersede section 11513.[4] Unlike statutes

---

[3]The mere admissibility of evidence does not necessarily confer the status of "sufficiency" to support a finding absent other competent evidence. "Admissibility is not the equivalent of evaluation; the former makes certain concessions in the interest of full and complete discovery while the latter, in the interest of fairness, withholds legal sanction to evidence found not to be trustworthy. Unlike the common practice in judicial proceedings, the fact that evidence may be admissible does not therefore guarantee the sufficiency of such evidence to sustain a finding." (Collins, *Hearsay and the Administrative Process: A Review and Reconsideration of the State of the Law of Certain Evidentiary Procedures Applicable in California Administrative Proceedings* (1976) 8 Sw.U.L.Rev. 577, 591 (hereafter cited as *Hearsay and the Administrative Process*).)

[4]Other statutory schemes authorizing admission of hearsay evidence in administrative hearings do so unequivocally. For example, the statutes governing procedure in a workers' compensation hearing quite specifically authorize the admission and sufficiency of certain evidence. Labor Code section 5703 provides: "The appeals board may receive evidence either at or subse-

that clearly authorize exceptions to the hearsay rule,[5] section 14108 does not reflect any factors providing the necessary competency, reliability, and trustworthiness that would transform the SR 1 report into legally sufficient evidence. That the report is made an "official record" of the D.M.V. does not suffice to create a greater degree of competency, reliability or trustworthiness in the *preparation* of the report. Particularly in this case, the form, as filed, lacks the requisite assurance of reliability that must be demanded before it will support a finding. In this case, for example, there is no claim of bodily injury. The section of the form providing for a "Cost Estimate by a Garageman" is incomplete. The estimate by the author is of $400 damage, but there is no mention of any expert opinion or other basis for concluding that there was in fact that amount of damage. The amount of property damage is crucial because no duty arises to prepare the report or otherwise rebut the claim of facts authorizing suspension unless, in the absence of bodily injury, the amount of damages exceeds the statutory trigger point.

The D.M.V. contends that the rationale of *Burkhart* v. *Department of Motor Vehicles, supra,* 124 Cal.App.3d 99, supports reliance solely on the SR 1 report. In *Burkhart* the court held that the police officer's written statement admitted in a license suspension hearing under the implied consent law (§ 13353)

---

quent to a hearing, *and use as proof of any fact* in dispute, the following matters, in addition to sworn testimony presented in open hearing:

"(a) Reports of attending or examining physicians.

"(b) Reports of special investigators appointed by the appeals board or a referee to investigate and report upon any scientific or medical question.

"(c) Reports of employers, containing copies of timesheets, book accounts, reports, and other records properly authenticated.

"(d) Properly authenticated copies of hospital records of the case of the injured employee.

"(e) All publications of the Division of Industrial Accidents.

"(f) All official publications of state and United States governments.

"(g) Excerpts from expert testimony received by the appeals board upon similar issues of scientific fact in other cases and the prior decisions of the appeals board upon such issues." (Italics added.)

Labor Code section 5708 provides: "All hearings and investigations before the appeals board or a referee are governed by this division and by the rules of practice and procedures adopted by the appeals board. In the conduct thereof *they shall not be bound by the common law or statutory rules of evidence* and procedure, but may make inquiry in the manner, through oral testimony and records, which is best calculated to ascertain the substantial rights of the parties and carry out justly the spirit and provisions of this division. All oral testimony, objections, and rulings shall be taken down in shorthand by a competent phonographic reporter." (Italics added.)

Labor Code section 5709 provides: "No informality in any proceeding or in the manner of taking testimony shall invalidate any order, decision, award, or rule made and filed as specified in this division. *No order, decision, award, or rule shall be invalidated because of the admission into the record, and use as proof of any fact in dispute, of any evidence not admissible under the common law or statutory rules of evidence and procedure.*" (Italics added.) Even in this context, however, the "use" of hearsay evidence does not necessarily sanction sole reliance on uncorroborated hearsay. (See *Hearsay and the Administrative Process, supra,* fn. 132 at p. 603.)

[5]See, for example, Evidence Code section 1271 (business records); Evidence Code section 1280 (official records); Evidence Code section 1220 (admissions of a party); Evidence Code section 1240 (spontaneous statements).

was sufficient in itself to support a finding of failure to complete a chemical test, and that the procedure did not violate due process. Burkhart was arrested for driving under the influence of alcohol. (§ 23102, subd. (a).) On the same date the arresting officer executed a sworn statement under section 13353 to the effect that Burkhart had refused to take any chemical test as required by that section. Upon notice of intent to suspend his license, Burkhart requested a hearing pursuant to section 14107. The hearing was postponed twice because of the failure of the arresting officer to appear, and finally an informal hearing was held without the presence of the officer. At the hearing, the referee introduced the officer's sworn statement over objection of Burkhart's counsel. Burkhart and his wife contested several portions of the officer's statement; nevertheless, the referee found against Burkhart. The superior court held that the officer's statement was not sufficient prima facie evidence of any matter as to which there is conflicting evidence. In holding to the contrary, the Court of Appeal recognized that due process required a balancing test of the various interests involved, but concluded that the presence of the officer would not substantially enhance the reliability of the hearing process, and the governmental interest and fiscal and administrative burdens involved outweighed requiring the state to produce the officer at the hearing.

In reaching that conclusion, *Burkhart* relied on *Fankhauser* v. *Orr* (1968) 268 Cal.App.2d 418 [74 Cal.Rptr. 61]. The *Fankhauser* court held that the report of the officer in an implied consent hearing was hearsay but that it was made admissible by section 14108. However, *Fankhauser* was a case where the licensee testified at the hearing, and his testimony *supported* the officer's written statement regarding probable cause to stop him and did not controvert the other averments of the officer's sworn statement. (268 Cal.App.2d at p. 423.) In addition, *Burkhart* specifically recognized but refused to follow contrary authority that declined to elevate the officer's written statement to the status of prima facie evidence if objected to or in conflict with other evidence. (See *August* v. *Department of Motor Vehicles* (1968) 264 Cal.App.2d 52 [70 Cal.Rptr. 172]; *Fallis* v. *Department of Motor Vehicles* (1968) 264 Cal.App.2d 373 [70 Cal.Rptr. 595].)

The court in *August* found that there was no dispute as to the existence of the facts upon which the D.M.V. suspended August's license under section 13353, and that August had failed to object to the introduction of the officer's report or request cross-examination of the officer at the informal hearing. Nevertheless, the court suggested that due process required providing the right to cross-examination when the licensee requests a hearing and contests the evidence presented by the agency. (264 Cal.App.2d at p. 60.) A stronger case for the right to cross-examine exists where, as here, the suspension is based on the uncorroborated report of a citizen who by chance happens to be involved in an accident.

Assuming, arguendo, the viability of the conclusion of *Burkhart* in the implied consent context, that case does not necessarily dispose of the question in this case. The result in *Burkhart* could be justified under the theory that the report filed by an officer under section 13353 would qualify under Evidence Code section 1271 as a business record or under Evidence Code section 1280 as an official record. Unlike the driver involved in an automobile accident, the statement under section 13353 is made by the officer in the regular course of his or her "business." In addition, the officer's report is a writing "made by and within the scope of duty of a public employee," and meets the other criteria of Evidence Code section 1280, and would thus qualify under that statutory exception to the hearsay rule as well. Whether these distinctions justify sole reliance on the officer's report in an implied consent hearing we need not now decide.

The SR 1 report filed in this case does not in itself reflect the competency, reliability, and trustworthiness necessary to permit use of the report as the sole basis for a finding supporting a license suspension. In view of the importance of the right affected and the lack of legislative authorization allowing sole reliance on the SR 1 report, we hold that, when the licensee requests a hearing, the SR 1 report is in itself insufficient to establish a prima facie showing of the facts supporting the suspension of a driver's license.

The judgment of the trial court is reversed and the cause is remanded to the trail court with directions to grant Daniels' petition and issue a peremptory writ commanding the D.M.V. to set aside its order of suspension and proceed in accordance with the views expressed herein.

Bird, C. J., Mosk, J., Richardson, J., Kaus, J., Reynoso, J., and Dalsimer, J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.